**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PATRICK LOUIS FERRO,          :          No. 3:24-CV-1013
        **Plaintiff**          :
                             :          **(Judge Munley)**
    **v.**          :
                             :
ANGELA HOOVER, *et al.*,          :
        **Defendants**          :

## MEMORANDUM

    Plaintiff Patrick Louis Ferro initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutional violations by officials at Clinton County Correctional Facility (CCCF), in McElhattan, Pennsylvania.  The court will dismiss Ferro's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted but will provide leave to amend.

## I.    BACKGROUND

    Ferro alleges that, during the time in question, he was a pretrial detainee at CCCF.  (See Doc. 1 at 2, 5).  In his handwritten complaint, he discusses two unrelated incidents.  Ferro first claims that, in March 2024, he accidentally rolled off the top bunk in his cell and sustained injuries to his head and neck.  (See id.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

at 4).  He contends that unspecified prison officials failed to keep him safe because there was no "safety" or "side bar" on the top bunk.  (Id. at 5).

In a separate, unrelated incident, Ferro alleges that CCCF officials failed to protect him from an inmate assault.  Ferro recounts that he had asked CCCF officials—through a "digital request"—to keep him separate from inmate Cody Shadel due to Shadel being physically and verbally hostile toward him.  (Id. at 7). Ferro avers that his request was acknowledged by "Lt. King," but that King and "other staff" refused to separate Ferro and Shadel.  (Id.)  Approximately one week later, Ferro claims that Shadel entered his cell, pushed him against the wall, and grabbed him "by the genitals."  (Id. at 7-8).  Ferro filed a PREA complaint regarding the incident and contends that prison officials retaliated against him for it by putting him in segregated housing ("the hole") and then transferring him to Dauphin County Prison.  (Id.)

Ferro names two defendants: CCCF Warden Angela Hoover and inmate Cody Shadel.  (Id. at 2-3).  He seeks "money damages" for physical and emotional injuries.  (Id. at 8).  Ferro, however, fails to state a claim upon which relief may be granted, so the court must dismiss his complaint.

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or

employees.  See 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"  Id. § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).  See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230

(3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Ferro proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se*

litigant, like Ferro, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d

Cir. 2020) (citation omitted).

## III.   DISCUSSION

Before addressing the sufficiency of Ferro's complaint, the court must

identify the claimed constitutional violations.  See Albright v. Oliver, 510 U.S.

266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the

specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S.

386, 394 (1989) (explaining that analysis of a Section 1983 claim requires

"identifying the specific constitutional right allegedly infringed by the challenged"

conduct).

Ferro does not invoke any specific constitutional amendments.  He instead

uses the phrase "failure to protect" multiple times.  (See Doc. 1 at 5).  As best as

the court can discern, Ferro is asserting two unrelated Fourteenth Amendment[2]

failure-to-protect claims and a First Amendment retaliation claim.  These Section

---

[2] Because Ferro avers that he was a pretrial detainee (not a convicted and sentenced prisoner)
at the time of the alleged events, his failure-to-protect claims implicate the Due Process Clause
of the Fourteenth Amendment, not the Eighth Amendment's prohibition of cruel and unusual
punishments.  See Jacobs v. Cumberland Cnty., 8 F.4th 187, 193-94 (3d Cir. 2021); Thomas v.
Cumberland Cnty., 749 F.3d 217, 223 n.4 (3d Cir. 2014); Hubbard v. Taylor, 399 F.3d 150, 164
(3d Cir. 2005) (Hubbard I); see also Paulino v. Burlington Cnty. Jail, 438 F. App'x 106 (3d Cir.
2011) (nonprecedential) (explaining that "sentenced prisoners are protected from punishment
that is 'cruel and unusual,' while pretrial detainees are protected from any punishment" (citing
Hubbard I, 399 F.3d at 166-67)).

1983 claims are deficient for multiple reasons. The court will address Ferro's
pleading deficiencies in turn.

## A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be
"predicated solely on the operation of *respondeat superior*." Rode v.
Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also
Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens
context). Rather, a Section 1983 plaintiff must plausibly plead facts that
demonstrate the defendant's "personal involvement in the alleged misconduct."
Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can
include direct wrongful conduct by a defendant, but it can also be demonstrated
through evidence of "personal direction" or "actual knowledge and
acquiescence"; however, such averments must be made with particularity. Id.
(quoting Rode, 845 F.2d at 1207). Furthermore, it is equally settled that
involvement in the post-incident grievance process alone does not give rise to
Section 1983 liability. See id. (affirming dismissal of claims against prison
officials for lack of personal involvement when officials' "only involvement" was
"their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp.
3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x
923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x

924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Ferro's first and primary deficiency is that he fails to allege personal involvement for the purported constitutional violations.  His complaint is silent as to the alleged unlawful action (or inaction) of the single state actor named as a defendant—Warden Angelo Hoover.  In fact, Ferro does not plead any allegations as to Hoover's conduct.  Accordingly, the court must dismiss the Section 1983 claim (or claims) against Hoover for lack of personal involvement.

**B.    State Action**

Ferro also names inmate Cody Shadel as a defendant.  However, Ferro has not established how Shadel was acting under color of state law when he sexually assaulted Ferro such that he could be liable under 42 U.S.C. § 1983.  Only state actors are subject to Section 1983 liability.  See 42 U.S.C. § 1983; Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).  Ferro has provided no plausible allegations as to why Shadel—a county prisoner Ferro accuses of perpetrating unlawful conduct—should be deemed a state actor under Section 1983.  See Kach, 589 F.3d at 646.  Consequently, any Section 1983 claim against Shadel must be dismissed under Section 1915A(b)(1).

**C.    Fourteenth Amendment Failure-to-Protect Claims**

As noted above, at all relevant times Ferro was a pretrial detainee at CCCF.  However, it does not appear that the United States Court of Appeals for the Third Circuit has developed or adhered to a different standard for pretrial detainee failure-to-protect claims as opposed to those raised by convicted and sentenced prisoners under the Eighth Amendment.  See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (applying Eighth Amendment standard to pretrial detainee failure-to-protect claim), abrogated on other grounds as stated by Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020); Paulino v. Burlington Cnty. Jail, 438 F. App'x 106, 109 (3d Cir. 2011) (nonprecedential) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991)); Thrower v. Alvies, 425 F. App'x 102, 105 (3d Cir. 2011) (nonprecedential) (applying Eighth Amendment standard to pretrial detainee claim alleging failure to protect from sexual assault by another inmate).  Accordingly, the court will likewise apply existing Eighth Amendment failure-to-protect jurisprudence to Ferro's claims.

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  Bistrian, 696 F.3d at 366.  Prison officials, therefore, have "a duty to protect prisoners from violence at the hands of other prisoners."  Id. (alteration in original) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  However, not "every injury suffered by one

prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." <u>Farmer</u>, 511 U.S. at 834.

To state an Eighth Amendment failure-to-protect claim against a prison official, the inmate must plausibly allege that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm." <u>Bistrian</u>, 696 F.3d at 367.  In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." <u>Id.</u> (quoting <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001)).  Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence." <u>Id.</u> (quoting <u>Farmer</u>, 511 U.S. at 842).

Ferro's Fourteenth Amendment claims fail because he has not pled facts showing that Warden Hoover was deliberately indifferent to a substantial risk to his safety or that her deliberate indifference caused him harm.  Ferro, in fact, has not alleged *any* facts regarding what Hoover did (or did not do) that purportedly violated his constitutional rights.  Without pleading plausible allegations showing deliberate indifference or causation, Ferro's Fourteenth Amendment claims must be dismissed for failure to state a claim for relief.

The court observes that Ferro alleges that he alerted other prison officials—namely, Lieutenant King—through a digital communication regarding a perceived threat from Shadel a week before the assault.  (See Doc. 1 at 7). Thus, it is possible that Ferro could amend his complaint to plausibly allege a failure-to-protect claim with respect to the assault by Shadel.

Ferro's claim that prison officials "failed to protect" him because they did not provide a safety rail on the top bunk fails for the same reasons as his inmate-assault claim.  That is, Ferro has not plausibly alleged deliberate indifference or causation for any Defendant or prison official.  Moreover, these allegations are completely untethered to his inmate-assault claim, so unless they target the same defendant or defendants, they cannot be joined together in a single Section 1983 action.  See FED. R. CIV. P. 20(a)(2).

### D.    First Amendment Retaliation

Ferro does not expressly invoke the First Amendment, yet he appears to assert a retaliation claim.  He alleges that, when he filed a PREA complaint regarding the sexual assault by Shadel, he was put in segregated housing and then transferred to another prison out of retaliation.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the

corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)).  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.  Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

The court assumes, without deciding, that Ferro has alleged constitutionally protected conduct with respect to filing a PREA complaint.  Cf. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (noting that prison grievances are protected conduct); see Robinson v. Palco, No. 21-2987, 2022 WL 3009746, at *3 (3d Cir. July 29, 2022) (nonprecedential) (finding that PREA complaint is protected conduct (citing Mitchell, 318 F.3d at 530)); Singleton v. Shearer, No. 1:17-CV-1027, 2019 WL 3337060, at *5 (M.D. Pa. July 25, 2019) (same).  Ferro has not, however, plausibly alleged an adverse action or causation.

Ferro first asserts that he was put in segregated housing after filing his PREA complaint.  While being subjected to punitive segregation could rise to the

level of an adverse action, Ferro does not allege how long he was kept in segregated housing or what those conditions of confinement entailed.  See Mitchell, 318 F.3d at 530 (finding that "several months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights"); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) ("Although it is possible that in some cases placement in administrative segregation would not deter a prisoner of ordinary firmness from exercising his or her First Amendment rights, we cannot say that such action can never amount to adverse action.").

Ferro next asserts that he was retaliated against by being transferred to Dauphin County Prison.  However, a mere transfer from CCCF to Dauphin County Prison (both county prisons that are located in central Pennsylvania and approximately 110 miles apart), without more, does not rise to the level of an "adverse action" for a First Amendment claim.  See Collazo v. Rozum, 646 F. App'x 274, 276 (3d Cir. 2016) (nonprecedential) (explaining that inmate had failed to allege "how the prison transfer was an adverse action").  Although it is true that, under some circumstances, a facility transfer could be sufficient to deter a person of ordinary firmness from exercising their constitutional rights, those circumstances are not alleged here.  See, e.g., Rauser, 241 F.3d at 333 (noting that transfer to a distant prison where family could not visit could implicate adverse action); Siggers-El v. Barlow, 412 F.3d 693, 702, 704 (6th Cir. 2005)

(finding that prison transfer which caused loss of prison job and limited access to
plaintiff's attorney could amount to an adverse action); Williams v. Wetzel, No.
1:17-CV-79, 2020 WL 583983, at *8 (M.D. Pa. Feb. 6, 2020) (finding that prison
transfer was adverse action where it "punitively detach[ed] Plaintiff from his loved
ones and/or visitation" and affected his parole recommendation).

Ferro's retaliation claim also falls short because he does not plausibly
plead causation.  He does not allege who took the adverse actions or why that
prison official (or officials) would take those actions.  Assuming that Ferro is
targeting Warden Hoover (the only prison official named in his lawsuit), he has
not alleged that Hoover was responsible for his placement in segregated housing
or his prison transfer.  Nor has he plausibly alleged that Hoover was aware of his
PREA complaint and that this complaint was a substantial or motivating factor in
the alleged adverse actions.

Ferro has failed to plausibly plead two out of the three elements for a First
Amendment retaliation claim.  Thus, to the extent that he is asserting a retaliation
claim in his complaint, that claim must be dismissed pursuant to Section
1915A(b)(1) as well.

### E.   Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the
Prison Litigation Reform Act of 1995] should receive leave to amend unless

amendment would be inequitable or futile." Grayson, 293 F.3d at 114.  The court will grant Ferro leave to amend, as it is conceivable that he could amend his pleadings to plausibly allege a constitutional violation by CCCF officials.  Any Section 1983 claim against defendant Cody Shadel, however, will be dismissed with prejudice, as he is not a state actor subject to Section 1983 liability.

If Ferro chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth Ferro's claims in short, concise, and plain statements, and in sequentially numbered paragraphs.  Ferro must address the pleading deficiencies identified in this Memorandum.  In particular, he must name appropriate defendants and must specify the offending action (or inaction) by those defendants, thereby establishing the defendants' personal involvement in the alleged unconstitutional conduct.

Ferro must also sign the amended complaint and indicate the nature of the relief sought.  He may not include unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2).  For example, if his inmate-assault failure-to-protect claim targets different officials than his bunkbed-based failure-to-protect claim, those unrelated claims cannot be joined together in the same Section 1983 lawsuit.

If Ferro does not timely file an amended complaint, dismissal of his complaint will automatically convert to dismissal with prejudice and the court will close this case.

## IV.   CONCLUSION

Based on the foregoing, the court will dismiss Ferro's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.   Leave to amend will be granted.   An appropriate Order follows.

Date: _____9/9/24_____

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court